UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────────┐
│ USDC SDNY                                 │
│ DOCUMENT                                  │
│ ELECTRONICALLY FILED                      │
│ DOC #:_____                    │
│ DATE FILED:___11/4/2025____               │
└─────────────────────────────────────────┘
```

E.M.M.,

               Petitioner,

        -against-

JUDITH ALMODOVAR, et al.,

               Respondents.

25-CV-08212 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

      Petitioner E.M.M. is a Nicaraguan national who lives in the United States under an order of supervision. When E.M.M. appeared for a scheduled check-in on October 3, 2025, pursuant to his order of supervision, U.S. Immigration and Customs Enforcement ("ICE") detained him and informed him that his order of supervision had been revoked. The same day, E.M.M. filed the instant petition for a writ of a habeas corpus under 28 U.S.C. § 2241 (the "Petition"). E.M.M. seeks, *inter alia*, an order requiring his immediate release because the Government violated his Fifth Amendment right to due process. Respondents are Judith Almodovar, Todd Lyons, Kristi Noem, the U.S. Department of Homeland Security, and ICE (collectively, the "Government"). For the following reasons, the Court GRANTS the Petition in part and ORDERS the Government to release E.M.M. from custody.

**BACKGROUND**[1]

## I.    RELEVANT FACTS AND PROCEDURAL HISTORY[2]

E.M.M. is a Nicaraguan national.  He first entered the United States on a valid tourist visa in January 2018 and voluntarily departed in March 2018.  Opp. at 5; Dkt. No. 21-1; Dkt. No. 22 ¶ 5.  In December 2018, E.M.M. attempted to re-enter the United States on another tourist visa and was interviewed by officers from the Department of Homeland Security ("DHS") at the airport.  Dkt. No. 21-1.  During that interview, E.M.M. admitted he had worked briefly without authorization during his previous visit to the United States.  *Id.*  That same day, DHS ordered E.M.M. removed from the United States pursuant to a valid removal order (the "2018 Removal Order"), which barred him from returning to the United States for five years.  Dkt. No. 21-1 at 4; Dkt. No. 21-2.  On April 4, 2022, Customs and Border Patrol ("CBP") apprehended E.M.M. crossing illegally into the United States.  Dkt. No. 22 ¶ 9–11.  Two days later, E.M.M. informed CBP he feared persecution due to his political activism if removed to Nicaragua, Dkt. No. 22 ¶ 13, and CBP issued a notice of intent/decision to reinstate the 2018 Removal Order, Dkt. No. 21-4.  The Government detained E.M.M. for approximately one month.  Dkt. No. 1 ¶¶ 50–53.  Then, on May 4, 2022, ICE placed E.M.M. on supervised release pursuant to an order of supervision (the "OSUP").  Dkt. No. 21-5.  The OSUP states that ICE was placing E.M.M. on supervised release because ICE had "not effected [E.M.M.'s] deportation or removal during the period prescribed by law."  *Id.*

---

[1] At the October 27 hearing, the Government affirmed that it was not challenging this Court's subject-matter jurisdiction.  The Court has subject-matter jurisdiction to hear E.M.M.'s claim that the *manner* in which the Government revoked his order of supervision violated his constitutional rights.  *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 152 (W.D.N.Y. 2025).

[2] The following facts are taken from the Petition and the declarations accompanying the briefs of the parties.  *See* Dkt. Nos. 1, 22, & 24-1.  The Court shall refer to the Government's opposition to the Order to Show Cause (Dkt. No. 23) as "Opp." and E.M.M.'s reply (Dkt. No. 25) as "Reply."

E.M.M. reportedly abided by all the terms of the OSUP for the next three years and appeared at all his immigration-related appointments.  Dkt. No. 1 ¶ 55.  At his last such appointment on October 3, 2025, however, ICE detained E.M.M. and provided him a revocation notice stating that E.M.M.'s OSUP had been revoked (the "Revocation Notice").  Dkt. No. 21-6.  Crucial to this Opinion, the Revocation Notice was signed and authorized by Assistant Field Office Director Darius L Robinson.[3]  *Id.* (identifying Mr. Robinson as an "AFOD").  E.M.M. filed the Petition that same day.  Dkt. No. 1.  The Court issued an order to show cause enjoining the Government from removing E.M.M., soliciting briefs from the parties, and convening a hearing that occurred on October 27, 2025.  Dkt. Nos. 7 & 12.

Through his Petition, E.M.M. seeks two orders.  First, E.M.M. seeks an order compelling the Government to give him a reasonable fear interview concerning his fear of persecution if returned to Nicaragua.[4]  Dkt. No. 1 at 20.  The Government has since confirmed that E.M.M. received a reasonable fear interview and been referred to an immigration judge for withholding-only proceedings seeking to forestall his removal to Nicaragua.  Dkt. No. 28; *see* 8 C.F.R. § 208.31(e).  Hence, the part of E.M.M.'s petition seeking a reasonable fear interview is denied as moot.  Second, E.M.M. seeks an order releasing him from custody because the Government's process for revoking his OSUP violated applicable regulations.  Dkt. No. 1 at 20.  Specifically, E.M.M. argued that Mr. Robinson, an assistant field office director, was not authorized by the

---

[3] The Government has not alleged that anyone other than Mr. Robinson made the decision to revoke E.M.M.'s OSUP.  Nor has the Government alleged that assistant field office directors are the equivalent of district directors.

[4] The Petition alleged that E.M.M. was entitled to a "credible fear" interview as part of an application for asylum.  At the hearing, E.M.M.'s counsel confirmed that E.M.M. is ineligible for asylum relief under 28 U.S.C. § 1231(a)(1)(5) but stated that E.M.M. is entitled to a "reasonable fear" interview for purposes of seeking withholding-only relief.

applicable regulation to revoke his OSUP.  Reply at 8.[5]  During the hearing, the Government

provided a delegation order that it contends authorized assistant field office directors to revoke

OSUPs (the "Delegation Order").[6]

## II.    STATUTORY AND REGULATORY BACKGROUND

Section 1231 of the United States Code governs the detention and removal of aliens[7]

ordered removed.  *See* 8 U.S.C. § 1231; *Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021).[8]

The statute provides that, after "an alien is ordered removed," the Government shall remove the

alien within a ninety (90) day period called the "removal period."  8 U.S.C. § 1231(a)(1)(A).

Once the removal period elapses, Section 1231(a)(6) provides that "an alien ordered removed

who is inadmissible under section 1182" may either be detained beyond the removal period or

released subject to "terms of supervision."  8 U.S.C. § 1231(a)(6).  All parties agreed at the

hearing that Section 1231 governs this case.  *Accord Johnson*, 594 U.S. at 526.

Two regulations control the Government's procedures for granting or revoking

supervised release under Section 1231(a)(6).  The first is 8 C.F.R. § 241.4 ("Section 241.4.").

Section 241.4 regulates the "custody determination" of aliens like E.M.M. who were ordered

removed from the United States.  8 C.F.R. § 241.4(a)(1).  Section 241.4 permits Government

officials to issue an OSUP on consideration of certain factors.  8 C.F.R. § 241.4(e), (f).  And it

---

[5] E.M.M. made other arguments against the validity of his OSUP revocation, including that no "informal interview" occurred.  *See* Reply at 6.  Because, as discussed below, the Court finds that Mr. Robinson was not authorized by statute or regulation to revoke E.M.M.'s OSUP, these other arguments need not be reached.

[6] The Delegation Order bears FEA Number 306-112-002a and an issue date and effective date of July 25, 2019.  The Order is attached to this Opinion as Attachment A.

[7] The Court uses the term "alien" consistent with the language of the applicable statute, 8 U.S.C. § 1231.

[8] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

provides two bases on which the Government may revoke an alien's OSUP, enumerated at Section 241.4(l). First, the Government may revoke an OSUP if the alien violates any of the terms of his or her release. 8 C.F.R. § 241.4(l)(1). And second, the Government may revoke an OSUP on the determination of the Executive Associate Commissioner or a district director, "when, in the opinion of the revoking official: (i) The purposes of release have been served; (ii) The alien violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2).

The second regulation establishing procedures for issuing and revoking supervised release is 8 C.F.R. § 241.13 ("Section 241.13"). The Supreme Court in *Zadvydas v. Davis* held that due process prevents the Government from indefinitely detaining an alien who showed a reasonable likelihood that the alien will not be removed in the foreseeable future, and required the Government to implement certain procedures for the release of an alien who has made such a showing. 533 U.S. 78, 689, 701 (2001). The Government promulgated Section 241.13 to codify "the *Zadvydas* procedures." *Johnson*, 594 U.S. at 530; *Fajardo v. Decker*, No. 22-CV-3014 (PAE), 2022 WL 17414471, at *6 (S.D.N.Y. December 5, 2022). Consistent with its purpose, Section 241.13 establishes "special review procedures" if an alien is detained under Section 1231 after the statutory removal period lapses "where the alien has provided good reason to believe there is no significant likelihood of removal." 8 C.F.R. § 241.13(a). These "special review procedures" begin once an alien submits a written request providing reasons why there is no significant likelihood the Government will remove him or her. 8 C.F.R. § 241.13(d)(1). The written request triggers a formal review by the Headquarters Post-Order Detention Unit ("HQPDU"). 8 C.F.R. § 241.13(e), (f). Once the review concludes, the HQPDU issues a

"written decision" regarding "whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future under the circumstances." 8 C.F.R. § 241.13(g). If that likelihood is low or not significant, the HQPDU may issue the alien an OSUP pursuant to Section 241.13(h).

Like Section 241.4, Section 241.13 provides two bases for revoking an OSUP, enumerated at Section 241.13(i). First, the Government may revoke an OSUP if the alien violates a term of release. 8 C.F.R. § 241.13(i)(1).[9] And second, the Government may revoke an OSUP if "on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). The "Service" is a defined term and encompasses "U.S. Citizenship and Immigration Services, [CBP], and/or [ICE], as appropriate in the context in which the term appears." 8 C.F.R. § 1.2. Finally, Section 241.13 includes a "relationship to [Section] 241.4" provision stating that Section 241.4 "shall continue to govern" an alien's detention, "including aliens who have requested a review of the likelihood of their removal under this section, unless the Service makes a determination under this section that there is no significant likelihood of removal in the reasonably foreseeable future." 8 C.F.R. § 241.13(b)(1).

## DISCUSSION

Resolving the Petition requires the Court to determine whether the Government validly revoked E.M.M.'s OSUP pursuant to its regulations. The Government argued at the October 27 hearing that it validly revoked E.M.M.'s OSUP pursuant to either Sections 241.13(i)(2) or 241.4(l)(2). The Court disagrees. The Government could not have revoked E.M.M.'s OSUP

---

[9] Regardless of which regulation controls, the Government does not contend that E.M.M. violated any term or condition of his supervised release.

pursuant to 241.13(i) because that regulation is inapplicable to E.M.M.  And the Government did not validly revoke E.M.M.'s OSUP pursuant to 241.4(l)(2) because the Revocation Notice was not validly authorized.  As a result, the Government revoked E.M.M.'s OSUP without due process, necessitating E.M.M.'s release from custody.

## I.    STANDARD OF REVIEW

The Court may grant the writ of habeas corpus if a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  All persons in the United States have a right to due process under the Fifth Amendment.  *See Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").  If the Government's violation of its own regulations culminates in an alien's detention, due process may require that alien's release.  *See Zhu v. Genalo*, No. 25-CV-06523 (JLR), 2025 WL 2452352, at *9 (S.D.N.Y. Aug. 26, 2025); *Lopez Benitez v. Francis*, 25-CV-05937 (DEH), 2025 WL 2371588, at *15 (S.D.N.Y. Aug. 13, 2025); *Chipantiza-Sisalema v. Francis*, No. 25-CV-05528 (AT), 2025 WL 1927931, at * 3–4 (S.D.N.Y. July 13, 2025)

## II.    SECTION 241.13 DOES NOT APPLY TO E.M.M.'S CASE, SO THE GOVERNMENT COULD NOT HAVE REVOKED E.M.M.'S OSUP UNDER SECTION 241.13(I)

At the hearing, the Government argued that it lawfully revoked E.M.M.'s OSUP under Section 241.13(i)(2).  That provision authorizes the Government to revoke an alien's OSUP "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed."  At the October 27 hearing, the Government identified those "changed circumstances" as a policy decision to devote more resources to removal operations, which has altered the likelihood that E.M.M. could successfully be removed from the United States.  However, the Government may validly revoke an OSUP under Section 241.13(i)(2) only

if the Government first issued the OSUP pursuant to 241.13's "special review procedures,"

which does not apply to E.M.M.'s OSUP.

>    1.    **Section 241.13(i) Only Permits the Government to Revoke OSUPs that Derive from Section 241.13's Special Review Procedures**

The plain text of Section 241.13 suggests that the Government may rely on Section

241.13(i) to revoke an OSUP only if the Government first issued the OSUP pursuant to Section

241.13's "special review procedures."  Section 241.13's "scope" provision says that the

procedures of Section 241.13 apply only "where the alien has provided good reason to believe

there is no significant likelihood of removal."  8 C.F.R. § 241.13(a).  Furthermore, the regulation

includes a "relationship to Section 241.4" provision establishing that Section 241.4 "shall

continue to govern . . . unless the Service makes a determination *under this section* that there is

no significant likelihood of removal in the reasonably foreseeable future."  8 C.F.R.

§ 241.13(b)(1) (emphasis added).  These provisions both suggest that the procedures of Section

241.13—including its revocation procedure codified at 241.13(i)(2)—only become available to

the Government after an alien made an initial showing that there was no likelihood the

Government could remove him or her, causing the Government to release the alien pursuant to

Section 241.13's special review procedures.  *Accord Rombot v. Souza*, 296 F. Supp. 3d 383, 387

(D. Mass. 2017); *id.* at 387 n.4; *Grigorian v. Bondi*, No. 25-CV-22914 (RAR), 2025 WL

2604573, at *5 (S.D. Fla. Sept. 9, 2025) ("Petitioner does not demonstrate that the revocation of

his OSUP is governed by § 241.13(i) because there is no indication that ICE initially released

him pursuant to § 241.13."); *Silva v. Moniz*, 2021 WL 2953338 (D. Mass. July 13, 2021);

*Momennia v. Bondi*, No. 25-CV-01067 (ALM), 2025 WL 3011896, at *4 (W.D. Okla. Oct. 15,

2025), *adopted by* 2025 WL 3006045 (W.D. Okla. Oct. 27. 2025) ("Section 241.13(i) provides

that procedures for a *revocation* of release under this section are only applicable when the alien

was *originally released* under an order of supervision 'under *this* section.'" (quoting 8 C.F.R. §
241.13(i)(2))).

Other portions of the text confirm this reading.  For example, an alien may be released
under Section 241.13 only after the HQPDU issues a written decision clarifying "whether there
is a significant likelihood that the alien will be removed in the reasonably foreseeable future
*under the circumstances*."  8 C.F.R. § 241.13(g) (emphasis added).  Section 241.13(i)(2) lets the
Government revisit that decision and revoke release, however, if "*on account of changed
circumstances*, the Service determines that there is a significant likelihood that the alien may be
removed."  (emphasis added).  These two provisions bear a logical relationship and corroborate
that the Government's authority to revoke an alien's release under Section 241.13(i)(2) is a
corollary to the Government having first released the alien pursuant to Section 241.13's "special
review procedures."  In cases where the Government never released an alien pursuant to Section
241.13's "special review procedures," however, Section 241.13(i)(2) loses its corollary and is
thus inapplicable.[10]

## 2. The Government Did Not Issue E.M.M.'s OSUP Pursuant to Section 241.13

Accordingly, the Government could revoke E.M.M.'s OSUP pursuant to Section
241.13(i) only if ICE issued E.M.M.'s OSUP under Section 241.13's "special review

---

[10] This textual conclusion also aligns with the Section 241.13's history.  The Government
promulgated Section 241.13 to codify the *Zadvydas'* procedures requiring the Government to release a
removable detained alien who has shown there is no significant likelihood of removal in the foreseeable
future.  *See Johnson*, 594 U.S. at 529; *see also Fajardo v. Decker*, No. 22-CV-3014 (PAE), 2022 WL
17414471, at *6 (S.D.N.Y. December 5, 2022) ("Regulations codified at 8 C.F.R. § 241.13 implement the
holding in *Zadvydas*.").  For example, Section 241.13(i)(2) permits the Government to re-detain an alien
whom it previously released if "on account of changed circumstances, the Service [then] determines that
there is a significant likelihood that the alien may be removed," in compliance with *Zadvydas'*
procedures.  8 C.F.R. § 241.13(i)(2).  But Section 241.13(i)(2) offers no basis to revoke an OSUP that the
Government issued under Section 241.4, which has no relationship to the *Zadvydas* procedures that
Section 241.13 codifies.

procedures." Scrutinizing the record, it appears clear that E.M.M.'s OSUP derived from Section 241.4, not Section 241.13.

Section 241.13 provides that Section 241.4 governs "unless the Service makes a determination *under this section* that there is no significant likelihood of removal." 8 C.F.R. § 241.13(b)(1) (emphasis added). A determination "under" Section 241.13 begins with a "written request," entails a formal review procedure, and culminates in a "written decision." 8 C.F.R. § 241.13(d)(1), (e), (f), (g), (h). No party alleges that any of these steps occurred while E.M.M. was initially detained from April 2022 to May 2022. Furthermore, E.M.M.'s OSUP plainly states that E.M.M. was being released because ICE had "not effected [E.M.M.'s] deportation or removal during the period prescribed by law." Dkt. No. 21-5. But this says nothing about whether ICE—or any other Government agency—had determined that there was no reasonable likelihood it could remove E.M.M. in the foreseeable future, much less through the procedures set out in Section 241.13. Hence, E.M.M.'s OSUP was issued under Section 241.4, and thus could have been revoked consistent with due process only if the Government complied with its own regulations as set out in Section 241.4(l). The Court turns to that analysis now.

III.    **THE GOVERNMENT'S REVOCATION OF E.M.M.'S OSUP VIOLATED SECTION 241.4 BECAUSE AN ASSISTANT FIELD OFFICE DIRECTOR IS NOT AUTHORIZED UNDER SECTION 241.4 TO REVOKE AN OSUP**

Section 241.4 offers two bases to revoke an OSUP: (1) if the alien violates a condition of the OSUP; or (2) on the authority of the Executive Associate Commissioner or a district director. *See* 8 C.F.R. § 241.4(l)(1), (2). The Government confirmed at the hearing that it was not alleging E.M.M. violated a term of his release. So, the first basis for revocation, *i.e.*, Section 241.4(l)(1), does not apply.

That leaves the second basis, Section 241.4(l)(2), which requires that either the Executive Associate Commissioner or a district director decide to revoke E.M.M.'s OSUP. At the hearing,

E.M.M. argued that the individual who authorized his Revocation Notice was an assistant field office director and thus not an Executive Associate Commissioner or a district director. *See* also Reply at 7. The Government did not dispute this point, nor argue that an assistant field office director is somehow the functional equivalent of either of the authorized officials. Instead, the Government argued that assistant field office directors may validly revoke OSUPs pursuant to the Delegation Order that the Government furnished at the hearing. The Court disagrees. The Delegation Order delegates certain authority from Nathalie R. Asher (an Executive Associate Director, which is the functional equivalent of the Executive Associate Commissioner identified in the applicable regulations) to assistant field office directors, including: "Authority under INA § 241 [8 US.C. § 1231] and 8 C.F.R. Part 241, relating to *warrants of removal, reinstatement of removal, self-removal, and release of aliens from detention*." (emphasis added). Fatal to the Government's argument, the Delegation Order does not purport to delegate a general authority under 8 C.F.R. Part 241; rather, it does so only with respect to certain enumerated matters, none of which apply to E.M.M., whose "reinstatement of removal" happened in 2022. Revocation of release, which is a specific event enumerated elsewhere in the governing regulations, is found nowhere in the list of authorities delegated to assistant field office directors in the Delegation Order. Neither the relevant regulations nor the Delegation Order authorized the assistant field office director to revoke E.M.M.'s OSUP. And, as a result, the Government violated its regulations in revoking E.M.M.'s OSUP and E.M.M.'s continued detention pursuant to Mr. Robinson's decision is unlawful.

## CONCLUSION

Nothing in this Opinion constitutes a judgment on the Government's policy decision to devote public resources to removing as many aliens as it can. That is a political choice that is not

11

before the Court.  And, indeed, the Government's own regulations, as discussed above with respect to Section 241.4(l)(2), grant it enormous discretion regarding when and how the previously-authorized release of removable aliens may be revoked.  But that discretion is not unlimited.  If the Government does choose to embark upon a campaign of mass removal, the Constitution, its guarantees of due process to all persons present in the United States, and the rule of law all demand that detention and removal be conducted lawfully.  The lawful revocation of E.M.M.'s supervised release presents a low bar to the Government, and they may yet choose to clear it, but they have not done so on the present record and accordingly E.M.M. must be released from custody immediately.

For the foregoing reasons, the Court GRANTS E.M.M.'s habeas petition in part.  The Government is hereby ORDERED to release E.M.M. from custody.  The Government is further ORDERED to file a letter certifying compliance with this Court's Order by no later than **noon on Wednesday, November 5, 2025**.

Dated: November 4, 2025
     New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge
